UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re
    NATIONAL RISK ASSESSMENT INC.,          BK 14-11886 CLB

                            Debtor.          <u>DECISION & ORDER</u>
------------------------------------------------------

DANIEL E. BRICK, AS CHAPTER 7 TRUSTEE
FOR NATIONAL RISK ASSESSMENT INC.,

                            Plaintiff,          AP 16-1046 CLB

    v.

JOSEPH T. RING, JOHN H. RING, III,
JOHN RING, JR., NORA RING and
GRANITE TOWER CAPITAL

                            Defendants.
------------------------------------------------------

                          Brian J. Butler, Esq.
                          Suzanne M. Messer, Esq.
                          Melissa O. Rothbart, Esq.
                          Bond, Schoeneck & King, PLLC
                          One Lincoln Center
                          Syracuse, New York 13202
                          Attorneys for Plaintiff

                          John K. Rottaris, Esq.
                          Kevin R. Lelonek, Esq.
                          Gross Shuman P.C.
                          465 Main Street
                          Suite 600
                          Buffalo, New York 14203
                          Attorneys for Defendant John H. Ring, III

                          Joseph G. Makowski, Esq.
                          April J. Orlowski, Esq.
                          Law Office of Joseph G. Makowski, LLC
                          448 Delaware Avenue
                          Buffalo, New York 14202
                          Attorneys for Defendants Joseph T. Ring, John
                          Ring, Jr., and Nora Ring

Bucki, Chief U.S.B.J., W.D.N.Y.

In this action to avoid allegedly fraudulent conveyances, the trustee seeks to recover numerous transfers to the debtor's principal owner and three of his relatives. The case's many complex issues include the choice of law regarding the applicable "look back" period, and whether the debtor's financial statements provide adequate proof of insolvency.

Since June of 2004, Joseph T. Ring has served as president and chief executive officer of National Risk Assessment Inc. ("NRA"). During the period of its operation, NRA engaged in the business of facilitating independent medical examinations and peer reviews for insurance carriers. Incorporated in New York, NRA maintained offices in both New York and Florida. Around May of 2011, a serious illness prevented Joseph Ring from continuing to manage the affairs of the business. While Joseph was unable to work, his brother, John H. Ring, III ("John III") agreed to assist in the management of the company without salary. Although he did not then have an ownership interest in NRA, John III was given the title of "Chief Operating Officer."

NRA discontinued operations in April 2013. On August 15, 2014, the requisite number of creditors filed a petition for involuntary relief under Chapter 7 of the Bankruptcy Code. When the debtor failed to respond to the resulting summons, this Court entered an order for relief on October 8, 2014. The Office of the United States Trustee then appointed Daniel E. Brick to serve as Chapter 7 trustee.

On August 6, 2016, the Chapter 7 trustee commenced the present adversary proceeding against Joseph Ring, John III, John Ring, Jr., Nora Ring and a defendant against whom a default judgment has been taken. John Ring, Jr., and Nora Ring are the parents of Joseph and John III. A physician, John Ring, Jr., served as an unpaid medical consultant for NRA. In his complaint, the trustee alleges that "from August 15, 2008, to August 15, 2014, Joseph directed NRA to pay personal expenses and to make other payments on his behalf in the total amount of $1,089,572.81." He further claims that John III received $35,687.12 from the debtor between March 23, 2011, and April

16, 2013; and that John Ring, Jr., and Nora Ring received $41,450 from NRA between July 7, 2010, and April 5, 2011. The trustee now seeks to recover these sums.

The trustee's complaint asserts five causes of action. The first alleges that the suspect transfers were fraudulent conveyances that this Court can avoid under 11 U.S.C. §§ 548 and 544. The second cause of action relates only to the defendant against which the trustee has already obtained a default judgment. In the third and fourth causes of action, the trustee claims that Joseph and John III breached a fiduciary duty to the debtor by authorizing fraudulent conveyances to themselves or for their own benefit. The fifth cause of action seeks the equitable subordination of any claim that the defendants may wish to assert against the bankruptcy estate.

The Chapter 7 trustee has now moved for summary judgment. He argues that various financial statements of the debtor confirm its insolvency during the six years prior to entry of the order for bankruptcy relief. Asserting that the debtor received no benefit from any of the disputed transfers, the trustee asks the Court to find that those transfers constitute fraudulent conveyances that the estate may now recover for the benefit of creditors. The defendants respond that many of the transfers occurred before the period to which the controlling statute applies. As to all transfers, the defendants allege issues of fact with regard both to insolvency and to the absence of fair consideration.

Discussion

Limitations Period

A fraudulent conveyance most frequently occurs when an insolvent debtor transfers assets for less than fair consideration. Section 548 of the Bankruptcy Code generally allows a trustee to avoid fraudulent conveyances "made or incurred on or within 2 years before the date of the filing of the petition." 11 U.S.C. § 548(a)(1). Additionally, section 544 of the Bankruptcy Code empowers a trustee to exercise the rights of a creditor under state law to recover an avoidable transfer. For example, at the commencement of this bankruptcy proceeding, New York law allowed the recovery

of fraudulent transfers made within the prior six years. N.Y. C.P.L.R. 213(1), *Orr v. Kinderhill Corp.*, 991 F.2d 31 (2d Cir. 1993).[1] In contrast, Florida law recognized a right to recover fraudulent conveyances that occurred only during the previous four years. Fla. Stat. ch. 726.110. *Davis v. Crews (In re Davis)*, 138 B.R. 106, 108 (M.D. Fla. 1992).

Relying upon the applicable New York avoidance period, the trustee's complaint seeks to recover transfers that occurred within six years of the commencement of the bankruptcy case. Some of the defendants instead urge the application of Florida's shorter limitations period of four years. This difference holds particular significance for Joseph Ring, who allegedly received the benefit of more than $240,000 of transfers made between four and six years of filing of the involuntary petition.

In proceedings to recover fraudulent conveyances, "a bankruptcy court must apply the choice of law rules of the forum state." *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013). We turn, therefore, to New York's choice of law rules. Fraudulent conveyances are torts. *Geron* at 219; *Cruden v. Bank of New York*, 957 F.2d 961, 974 (2d Cir. 1992). For disputes of this type, the New York Court of Appeals has established the controlling standard, as follows:

> "Interest analysis became the relevant analytical approach to choice of law in tort actions in New York. '[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.' Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort."

*Schultz v. Boy Scouts of Am., Inc.*, 65 NY 2d 189, 197 (1985)(citations omitted).

---

[1] Effective as of April 4, 2020, New York State will replace the 1925 Fraudulent Conveyances Act with the Uniform Voidable Transactions Act. 2019 N.Y. SESS. LAWS, ch. 580, §2. If the new statute applied in the present instance, New York would have extinguished the trustee's cause of action as to transfers made more than four years prior to the bankruptcy filing. N.Y. DEBT. & CRED. L. § 278 (as effective on April 4, 2020).

Joseph Ring and his parents claim to be residents of Florida. In its bankruptcy petition, the debtor similarly lists an address in that state. On the other hand, the record does not establish a locus for many of the disputed transfers. Although some appear to have involved activities in one or the other state, the record is incomplete as to the location of many expenditures. Without a full record as to the nature and character of each transfer, the Court is unable to determine the appropriate choice of law. Consequently, until this issue is resolved, we must deny summary judgment with regard to any transfer made between four and six years of the bankruptcy filing.

Insolvency

The trustee's complaint seeks to recover allegedly fraudulent conveyances that occurred over the course of many days between August 2008 and July 2013. Although both New York and Florida law recognize several bases for finding an avoidable transfer,[2] the present motion for summary judgment relies on a premise of insolvency throughout the entire six years prior to the date of bankruptcy filing. The record may suffice to establish that the debtor was insolvent when it ceased operations in 2013, but issues of fact remain with regard to whether the debtor was already insolvent on the date of particular transfers.

In his attempt to establish insolvency, the trustee relies primarily on two forms of proof. The first are income tax returns of the debtor for 2008, 2009 and 2010. In particular, the trustee directs the Court's attention on each of those returns to "Schedule L – Balance Sheets per Books." Prepared for purposes of the tax return, this schedule is insufficient without more to establish insolvency. Depreciable assets are valued at their basis, and not at fair market value. The schedule also excludes intangible assets that are not subject to depreciation. On its face, therefore, this schedule excludes and minimizes assets whose market value may suffice to

---

[2] *See* N.Y. DEBT. & CRED. L. art. 10 (McKinney 2001) and FLA. STAT. ch. 726 (2020). For example, under both statutes, even without insolvency, a creditor may avoid conveyances made with actual intent "to hinder, delay, or defraud." N.Y. DEBT. & CRED. L. § 276 (McKinney 2001) and FLA. STAT. § 726.105(1)(a)(2020).

demonstrate solvency.

The second form of proof are unaudited balance sheets for calendar years 2009, 2010 and 2011. Although these balance sheets may suggest the possibility of insolvency, they are insufficient to establish insolvency on the date of any particular transfer. We reach this conclusion for three reasons. First, the unaudited character of the data has severely limited its utility. Second, the three sets of balance sheets are inconsistent with each other. Third, the defendants have raised issues of fact about the possibility of intangible assets that are not reported on any of the balance sheets.

The balance sheets for 2009 and 2010 are compilations prepared by accountants for the debtor. In a letter that accompanies these statements, the accountants acknowledge the inherent limitations of such evidence:

> "A compilation is limited to presenting information that is the representation of management in the form of financial statements. We have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any other form of assurance on them.
> Management has elected to omit substantially all of the disclosures required by accounting principles generally accepted in the United States of America. If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the Company's financial position, results of operations and cash flow. Accordingly, these statements are not designed for those who are not informed about such matters."

This lack of reliability is evident on the face of these balance sheets. Most notably, they state that various tangible assets are valued "at cost," which may or may not conform with fair market value. Meanwhile, the balance sheet for 2011 is not even an accountant's compilation, but merely a spreadsheet that the debtor maintained.

The balance sheets for 2009 and 2010 are also inconsistent with the data for 2011. Whereas the 2009 and 2010 balance sheets indicate a negative equity at year end, the 2011 balance sheet shows that the debtor had a positive equity through

March of 2011.  Although the balance sheets suggest the possibility of a negative equity at some time during their covered periods, their inconsistencies create an issue of fact as to which of the many transfers occurred at a time of insolvency.

To counter the evidence of insolvency, Joseph Ring directs the Court's attention to a Stock Purchase Agreement entered into as of October 4, 2010.  Pursuant to its terms, Joseph Ring, John Ring III, and a non-defendant agreed to sell 75 % of their stock in the debtor to HealthCorp NRA, LLC, for a consideration of $6,000,000.  Such an agreement would constitute some evidence that the debtor had intangible value in excess of what the balance sheets might suggest.  For example, we might speculate whether the debtor had good will whose value would have created a positive net worth for National Risk Assessment Inc.

For the reasons stated above, issues of fact remain with regard to the insolvency of the debtor.  Because the complaint seeks to recover numerous transfers that occurred over six years, the trustee needs to establish when the debtor became insolvent.  Because he has failed to demonstrate this occurrence, we must deny his motion for summary judgment on his cause of action for fraudulent conveyance.

Inadequacy of Consideration

The cause of action for fraudulent conveyance also requires proof of inadequate consideration.  Because the Court must deny the plaintiff's motion for summary judgment in any event due to the insufficiency of proof of insolvency, we need not make a finding at this time as to whether the trustee has met his burden of proof on this issue of inadequate consideration with regard to any of the transactions.  Nonetheless, the defendants make a strong argument that the debtor received fair consideration for at least some of the transfers.  The defendants, however, did not cross-move for summary judgment.  Pursuant to Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56 applies in adversary proceedings.  As amended in 2010, Rule 56(f) now provides that the Court may grant summary judgment to a non-movant only "[a]fter giving notice and a reasonable time to respond."  Consequently, the Court is

unable also to grant summary judgment to the defendants at this time. Instead, the parties may anticipate that further proceedings in this regard will be the subject of discussion at a scheduling conference that the Court will hereafter set.

### Breach of Fiduciary Duty and Subordination of Claims

In his third and fourth causes of action, the trustee alleges that Joseph Ring and John Ring III breached their fiduciary duties to the corporation by allowing the fraudulent conveyances that are the subject of the first cause of action. In his fifth cause of action, the trustee contends that any claim that the defendants may have against the debtor should be equitably subordinated, by reason of their acceptance of fraudulent transfers. Inasmuch as the third, fourth and fifth causes of action are based on a determination of liability for fraudulent conveyances, our denial of summary judgment on the first cause of action will compel us to deny the balance of the trustee's motion.

### Conclusion

For the reasons stated herein, the plaintiff's motion for summary judgment is in all respects denied. Pursuant to Bankruptcy Rule 7016, the Court will schedule by separate notice a further pre-trial conference with the parties.

So ordered.

Dated: January 30, 2020          /s/ Carl L. Bucki_____
       Buffalo, New York         Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.